IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

DELRICO ROBERTSON,

            Petitioner,      :      Case No. 2:19-cv-459

   - vs -                        District Judge George C. Smith
                                   Magistrate Judge Michael R. Merz

DAVID GRAY, Warden,
  Belmont Correctional Institution,

                                    :

            Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought by Petitioner Delrico Robertson with the assistance of counsel, is before the Court for decision on the Petition and supporting Brief (ECF Nos. 1, 2), the State Court Record (ECF No. 9), the Return of Writ (ECF No. 10), and Petitioner's Reply (ECF No. 13). Although Respondent sought and received permission to file a sur-reply (ECF No. 18, 19), he has elected not to do so (ECF No. 20).

**Litigation History**

Petitioner was indicted by the Hamilton Count grand jury on April 27, 2006, and charged with four counts of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1) (counts 1, 4) and § 2903.11(A)(2) (counts 2, 5) each with a gun specification, three counts of having a weapon while under disability in violation of Ohio Rev. Code § 2923.13(A)(3) (counts 3, 6, 8), and murder

in violation of Ohio Rev. Code § 2903.02(A) (count 7) with a firearm specification. The charges arose from the March 7, 2006, shooting of Michael Willis; the March 25, 2006, shooting of Andre Hayes, and the murder of Matthew Cox in April of that same year. Convicted by a jury on one count of murder for the death of Cox, two counts of felonious assault for the shooting of Hayes, two counts of felonious assault for the shooting of Willis, and three counts of having a weapon while under a disability, Robertson was sentenced to an aggregate term of fifty years to life.

On appeal, the Ohio First District Court of Appeals held that each set of felonious assault convictions should have been merged as allied offenses and remanded for resentencing. *State v. Robertson,* 2008-Ohio-2562, (Ohio App. 1st Dist. May 30, 2008)(*Robertson I*). The Supreme Court of Ohio declined to grant appellate review. *State v. Robertson*, 119 Ohio St. 3d 1503 (2008).

On February 11, 2009, the Court of Common Pleas merged the allied offenses; this did not change the aggregate sentence because the merged offenses had received concurrent sentences. Robertson appealed, asserting the allied offenses should have been vacated instead of merged. The First District Court of Appeals rejected that single assignment of error, and the Supreme Court of Ohio declined to review that decision (*State v. Robertson*, State Court Record, ECF No. 9, PageID 308-9, 325).

Robertson filed his first federal habeas corpus petition in January 2010, which this Court dismissed. *Robertson v. Kerns,* Case No. 1:10-cv-0462011 U.S. Dist. LEXIS 137545 (S.D. Ohio Nov. 30, 2011), aff'd, 517 Fed. App'x 404 (6th Cir. 2013).

On his second attempt to do so, the Hamilton County Court of Common Pleas allowed Robertson to file a delayed motion for new trial based on the post-trial deposition testimony of victim Michael Willis and then granted that motion as to all three victims. The First District affirmed as to Willis, but reversed as to the other two victims. *State v. Robertson*, 2017-Ohio-

7225 (Ohio Ct. App. 1st Dist. Aug. 16, 2017)(*Robertson II*), appellate jurisdiction declined, 152 Ohio St. 3d 1420 (2018). The trial court then vacated the conviction and sentences regarding Willis, but ordered that the sentences regarding the other two victims remain in effect. The instant Petition was then filed on February 12, 2019.[1]

Robertson pleads the following two grounds for relief:

> **Ground One:** The Ohio courts ruled contrary to, or unreasonably applied, clearly-established [sic] Supreme Court precedent by failing to find that Robertson's due process [rights] were violated as to all convictions, as the state suppressed exculpatory evidence that----as a result of the state's decision to join all charges for trial---affected and undermined all eight convictions, requiring an order vacating all convictions and setting the matter for a new trial.
>
> **Supporting Facts:** The trial court ruled that a series of "tolerable imperfections" in the case metastasized into a breach of Petitioner's constitutional rights to due process and a fair trial. These included Detective Upchurch's fabricated evidence and suppression of Willis' testimony at trial. The trial court vacated all eight convictions and ordered a new trial on all eight charges. In the face of Robertson's federal claim, the First Appellate District ignored all federal case law on the subjects, did not cite a single federal case or authority, and reversed the trial court as to five offenses.
>
> **Ground Two:** The Ohio courts entered decisions that was [sic] unreasonable in the light of the trial record by failing to find that Robertson's Due Process rights were violated as to all eight convictions, requiring an order vacating all eight convictions and setting the matter for a new trial on all eight charges.
>
> **Supporting Facts:** The trial court ruled that a series of "tolerable imperfections" in the case metastasized into a breach of Petitioner's constitutional rights to due process and a fair trial. These included Detective Upchurch's fabricated evidence and suppression of Willis' testimony at trial. The trial court vacated all eight convictions and ordered a new trial on all eight charge [sic]. The trial court explained the extent of Upchurch's misconduct and how her flawed investigation and lies at trial tainted and undermined all eight convictions. The First Appellate District's decision

---

[1] Because the contested convictions occurred in Hamilton County, the Petition should have been filed at the Cincinnati location of court. S. D. Ohio Civ. R. 82.1(f). Although that rule is mandatory, its violation does not deprive the Court of jurisdiction and transfer at this point would not serve judicial economy.

> questioning the trial court's credibility findings and re-weighing the
> evidence was an unreasonable decision in light of the trial record.

(Petition, ECF No. 1, PageID 5-7.)

## Analysis

The gravamen of Robertson's two grounds for relief is that the decision of the First District Court of Appeals, reversing the trial court's grant of a new trial on all eight counts of the indictment, is (1) an unreasonable application of Supreme Court precedent, and (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Robertson argues the decision is therefore not entitled to deference under either 28 U.S.C. § 2254(d)(1) or (d)(2).

This case was initially tried before Hamilton County Common Pleas Judge Richard A. Niehaus in early 2007. (See, e.g, Judgment Entry, State Court Record, ECF No. 8, PageID 71.) The case was still assigned to Judge Niehaus when the first motion for leave to file a delayed motion for new trial was filed in May 2011 (Motion, State Court Record, ECF No. 9, PageID 326). However, that motion was summarily denied in March 2012 by Judge Nadine Allen to whom the case had been reassigned (Entry, State Court Record, ECF No. 9, PageID 342).

Robertson's second motion for leave to file a delayed motion for new trial was filed four years after his first, on September 24, 2015, and was based on evidence asserted to be newly discovered, specifically the post-trial deposition testimony of victim Michael Willis (Request, State Court Record, ECF No. 9, PageID 371, *et seq.*). Judge Allen took live testimony from Willis on July 12, 2016 (Transcript, State Court Record, ECF No. 9-8, PageID 1652, *et seq.*), and two weeks later granted a new trial as to all of the charges (Entry, State Court Record, ECF No. 9,

PageID 489-95). The State appealed, presenting two assignments of error, to wit, (1) that Judge Allen had abused her discretion in granting a new trial as to the Willis shooting, and (2) that she had also abused her discretion in granting a new trial on the Andre Hayes shooting and the Matthew Cox murder (Appellant's Brief, State Court Record, ECF No. 9, PageID 499-500).

The First District acknowledged that on direct appeal it had found that the testimony of Detective Upchurch and Jamisha Willis identifying Robertson as having shot Michael Willis was inadmissible hearsay, but harmless error to admit in light of the eyewitness testimony of Lawrence Maupin. *Robertson II*, 2017-Ohio-7225 at ¶ 3, citing *Robertson I*, 2008-Ohio-2562 at ¶¶ 15-16. Michael Willis was the only witness at the hearing on the motion for new trial (Transcript, ECF No. 9-8, PageID 1652-98). Without hearing from any other witnesses, Judge Allen accepted Willis's testimony. The First District was skeptical but deferential to her findings on that point:

> **[*P18]** We find Willis's testimony to be somewhat incredulous,[2] especially his description of Detective Upchurch's investigative techniques and his statements that his sister had lied. However, we are mindful that credibility determinations are primarily for the trier of fact. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. We therefore reluctantly defer to the trial court's surprising determination that Willis was telling the truth.

*Robertson II*, 2017-Ohio-7225 at ¶18.

With respect to both assignments of error, the First District noted that, under Ohio law, the question of whether or not to grant a new trial is discretionary and a decision to grant or deny a new trial is reviewed for abuse of discretion. *Id.* at ¶ 19, citing *State v. Williams*, 43 Ohio St. 2d 88 (1975), paragraph two of the syllabus, and *State v. Adams*, 62 Ohio St. 2d 151, 157 (1980). It noted the Supreme Court of Ohio had held that

---

[2] The Magistrate Judge reads "incredulous" here to mean the First District found Willis's testimony less than credible.

5

> A motion for a new trial on the ground of newly discovered evidence may be granted where "the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence."

*Robertson II*, 2017-Ohio-7225 at ¶ 20, quoting *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus.

Applying this test to the first assignment of error, the state appellate court found no abuse of discretion in granting a new trial on the Willis shooting because, excluding inadmissible hearsay, the only identification of Robertson as Willis's shooter came from jailhouse informant Lawrence Maupin who stood to gain a 94% reduction in his potential sentence by cooperating in identifying Robertson and who had been heard by another inmate to admit his intention to lie at Robertson's trial to gain that benefit. *Robertson II*, 2017-Ohio-7225 at ¶¶ 21-29.

Applying the same test from *Petro* to the second assignment of error, the First District found an abuse of discretion in granting a new trial as to the Hayes shooting and the Cox murder. *Id.* at ¶¶ 30-37. It concluded Willis's new testimony related only to his own shooting and that the testimony identifying Robertson as the shooter in the Hayes' shooting was "overwhelming" and in the Cox murder, "compelling." *Id*. at ¶¶ 34-35. It found "surprising" Judge Allen's acceptance of Willis's testimony about Detective Upchurch's investigative techniques and that Upchurch had "intentionally failed to subpoena him at an address where he could be reached." *Robertson II*, 2017-Ohio-7225 at at ¶¶ 18, 33. It concluded, "There was no rational basis for the trial court to hold that Willis's testimony would in any way effect [sic] the outcome of a retrial on the Hayes shooting and the Cox murder charges" and reversed the grant of new trial on those charges. *Id.* at

¶ 39.

At the July 2016 hearing, Michael Willis testified he was shot on March 7, 2006 (Transcript, State Court Record, ECF No. 9-8, PageID 1656). He testified he did not know who shot him, that he was standing with his back to the shooter. *Id.* Willis was living in Atlanta at the time and was in Cincinnati to visit his mother. *Id.* at PageID 1657. He was shot five times in the back and hip. He does not know Delrico Robertson at all. He testified the police did not come to investigate at the time of the shooting, but came to him when he was in jail for driving without a license and showed him some pictures "and said this who did it. . . . But I never said he's the one that did it." *Id.* at PageID 1658-59. He was in the hospital for two or three weeks and although the police came to the hospital "the doctors told me they had to leave." *Id.* at PageID 1659.

Willis was transferred from the hospital to the Justice Center on an outstanding warrant for driving without a license "or something like that" and stayed for twenty to thirty days. *Id.* at PageID 1660. While he was there, he was visited by two detectives, including Detective Upchurch. They showed him six or eight pictures, all of the same person, Delrico Robertson. *Id.* at PageID 1661-62. Upchurch didn't ask him to identify Robertson, she just said "this is the person we got for your shooting." Contrary to Lawrence Maupin's testimony at trial (ECF No. 9-3, PageID 1146-47), Willis denied that he had attempted to break up a fight at the time of the shooting, *id.* at PageID 1663.

After Willis got out of the Justice Center, he went home to Atlanta. Upchurch did not know how to get in contact with him; she kept calling his mother who didn't answer the phone. (ECF No. 9-8, PageID 1663.) According to his mother, they kept showing up at his house. *Id.* at PageID 1664.

Willis asserted that if Upchurch testified at trial that he identified Robertson as the shooter, that would not be true. Nor did he ever tell his sister Jamisha Willis who it was that shot him. *Id.* at PageID 1665. No prosecutor ever contacted him. He gave defense counsel the same information he had just testified to, but "she took that down, and I ain't heard from her since." *Id.* at PageID 1666.

On cross-examination, Willis claimed he had never pointed Robertson out as the shooter to his sister. He claims that anything his sister testified to, she got from the detectives. Although he gives no foundation for that belief, he repeated it four times. *Id.* at PageID 1669-73.

He also testified Upchurch was mistaken when she said she presented him with six separate photographs: "She had to be, because how can I tell you somebody shot me if my back was turned?" *Id.* at PageID 1674. As to a description of Robertson,

> Q. On Page 491, Detective Upchurch testified that you gave her a description of Robertson, and you said he was light skinned, 5'8 or 5'9, low haircut, 140, a quarter-size mole on his forehead and he sells dope on 15th?
>
> A. Once again, if I don't know how the man look and my back was turned, how can I tell you anybody shot me. That's what -- that's what I'm trying to get to you.
>
> If my back turned, and I didn't see nobody shoot me, how can I tell you a name if I don't know this man from a can of paint? I can't even tell you what this man do if I don't know him.

*Id.* at PageID 1675.

On re-direct, Willis testified he was there because Robertson's lawyer contacted him. (ECF No. 9-8 at PageID 1677.) On re-cross he claimed he talked to his sister every day and that "she lied under oath because Detective Upchurch told her to." *Id.* at PageID 1679.

8

On the basis of this testimony alone, Judge Allen granted Robertson a new trial as to all three shootings. She found that "there can be no dispute" that Willis's testimony "was not discovered until after the trial." (Entry, State Court Record, ECF No. 9, PageID 437.) Nor, she held, could Robertson have discovered it before trial:

> It was the State's own witness, Detective Upchurch, who told Willis he did not need to appear in court and that she would take care of it. It was Detective Upchurch who never served a subpoena on Willis. It was Detective Upchurch who misrepresented the evidence to the jury. The conduct of the State's own witness insured that Willis would not appear at trial. It would be disingenuous for the State of Ohio to now claim that the Defendant could have discovered this evidence prior to trial, when it was the State's agent who made sure Willis did not appear in court and that the truth was suppressed.

*Id.* at PageID 438. Judge Allen does not cite any portion of Willis's in-court testimony to support his finding of State suppression of Willis's location. It appears likely from the record that she relied on Willis's video deposition given October 3, 2013 (Transcript attached to Request for Leave to File, State Court Record, ECF No. 9, PageID 375, referencing Transcript, Ex. A to Request, PageID 382-410). Although the deposition was taken as upon cross-examination by Robertson's counsel, questioning of Willis's testimony occurred; it is still uncross-examined hearsay.

Judge Allen found:

> By suppressing Willis[' testimony] the government violated Defendant's due process rights. See, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963) (due process is violated when the prosecution suppresses evidence favorable to the accused in a criminal case); *Kyles v. Whitley,* 514 U.S. 419, 437-38, 115 S.Ct. 1555 (1995)(the duty extends to information in possession of the law enforcement agency investigating the offense).

(ECF No. 9 at PageID 439.)

In defending Judge Allen's decision on appeal, Robertson did not cite either *Brady* or *Kyles* (Brief of Appellee, State Court Record, ECF No. 9, PageID 514). However, the State cited *Kyles* in a footnote in its Brief on the standard for determining materiality of *Brady* material. *Id.* at PageID 507, n. 10.

In upholding the State's second assignment of error, the First District focused its "analysis on the first prong of the *Petro* test, i.e., whether "the new evidence discloses a strong probability that it will change the result if a new trial is granted." *Petro*, 148 Ohio St. 505, 76 N.E.2d 370, syllabus. It concluded, "Even taking Willis's testimony as true, the trial court's determination that there was a strong probability that this evidence would change the outcome of a retrial on the Hayes shooting and Cox murder charges is not supported by a sound reasoning process."

The "strong probability" of a different trial outcome, applied here by the First District from *Petro*, is the same test to apply to determine materiality under *Brady* and *Kyles*. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 683 (1985); *Henness v. Bagley*, 644 F.3d 308, 324 (6th Cir. 2011). A reviewing court is to assess materiality in light of the evidence actually presented at trial. *Kyles v. Whitley*, 514 U.S. 419, 441-45 (1995).

To prevail on a *Brady* claim, the petitioner must show that the withheld exculpatory evidence was material; that is, it "could reasonably be taken to put the whole case in such a different light as to undermine the confidence in the verdict." *VanHook v. Bobby,* 661 F.3d 264, 267, (6th Cir. 2011), *quoting Kyles v. Whitley,* 514 U.S. 419, 435 (1995). The question of whether withheld evidence is material or not is a mixed question of law and fact. *United States v. Phillip*,

948 F.2d 241, 250 (6th Cir. 1991). The materiality of *Brady* evidence depends almost entirely on the value of the undisclosed evidence relative to the other evidence produced in the case. *Eakes v. Sexton*, 2014 U.S. App. LEXIS 22442 (6th Cir. Nov. 25, 2014), citing *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004). "Evidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469-70 (2009).

In overturning Judge Allen's conclusions as to the Hayes and Cox verdicts, the First District was overruling her *Brady* and *Kyles* holding on the materiality of the Willis testimony as to those verdicts. Although the First District did not cite *Brady* or any of its progeny, it application of the *Petro* materiality test is the functional equivalent: if evidence is immaterial for *Petro* purposes, it is also immaterial for *Brady* purposes because the test is the same – whether it is probable there would be a change in the trial result.

Thus, the Magistrate Judge disagrees with Respondent's position that the First District was only deciding a state law question, to wit, whether Judge Allen abused her discretion in granting a new trial as to the Hayes and Cox verdicts. It is true that a claim of abuse of discretion does not state a federal constitutional claim. *Sinistaj v. Burt,* 66 F.3d 804, 808 (6th Cir. 1995). But the critical question before the appellate court was whether making a mistake on the materiality of the Willis testimony led Judge Allen to abuse her discretion by granting a new trial on the Hayes and Cox verdicts. To reach the abuse of discretion question, the court had to apply the *Petro* materiality test which is the functional equivalent of the *Brady/Kyles* materiality test.

The Magistrate Judge also disagrees with Respondent's position that Robertson has procedurally defaulted his *Brady* claim. He raised it in the trial court in terms of suppression of

evidence by the State, terms sufficiently clear to focus Judge Allen's attention on *Brady* and *Kyles*. That is critical issue she decided in granting a new trial and the critical issue from *Petro* on which the First District focused in reversing her. The First District did not dispose of Robertson's *Brady* claim on any procedural basis, but decided it on the merits. Thus, the *Brady* issue is preserved for merits determination in this Court.

Petitioner admits that state courts "are not required to employ particular language, or to include explicit citations to federal case law in their decisions" in order to effectively decide federal questions (Reply, ECF No. 13, PageID 1743, citing *Coleman v. Thompson*, 501 U.S. 722, 739 (1991). In the same pleading, however, Petitioner emphasizes that a *Brady* claim was clearly presented to the trial court and it is the trial court's decision on the Hayes and Cox portions of the case that the First District overturned, necessarily deciding the materiality question. By addressing the materiality prong of *Petro*, the functional equivalent of a *Brady* materiality question, the First District decided the *Brady* claim, albeit without citing *Brady*.

Petitioner argues that Judge Allen "made a finding of fact, based upon personally viewing and hearing from the witnesses and making credibility determinations . . ." (Reply, ECF No. 13, PageID 1742). Judge Allen only personally heard one witness, Michael Willis; she was not the judge who tried the case. The question of whether withheld evidence is material or not is a mixed question of law and fact. *United States v. Phillip*, 948 F.2d 241, 250 (6th Cir. 1991). The materiality of *Brady* evidence depends almost entirely on the value of the undisclosed evidence relative to the other evidence produced in the case. *Kyles*, 514 U.S. at 441-45; *Eakes v. Sexton*, 2014 U.S. App. LEXIS 22442 (6th Cir. Nov. 25, 2014), citing *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004). Mixed questions of law and fact are reviewed under the "unreasonable

12

application" prong of the AEDPA. *White v. Mitchell*, 431 F.3d 517 (6th Cir. 2005), *citing Barnes v. Elo,* 339 F.3d 496, 501 (6th Cir. 2003); *Mitchell v. Mason*, 325 F.3d 732, 738 (6th Cir. 2003), *citing Harpster v. Ohio* 128 F.3d 322, 327 (6th Cir. 1997).

While the First District did defer to Judge Allen's credibility finding as to Michael Willis, it did not defer to her materiality conclusion as to the Hayes and Cox verdicts. There is no federal constitutional rule requiring a state appellate court to defer to state trial court conclusions on mixed questions of law and fact.

It is, of course, the First District's decision that this Court must review because that is the last reasoned state court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797 (1991). Our issue is not whether Judge Allen's decision was a reasonable application of *Brady*. Rather it is whether the First District's overruling of that decision was objectively unreasonable.

On the record presented here, the First District's decision of the *Brady* claim is neither contrary to nor an objectively unreasonable application of clearly established Supreme Court precedent. That court did exactly what the relevant Supreme Court precedent says should be done: it weighed the probable impact of the new Willis testimony against all the other evidence in the case and found it was material as to the Willis conviction but not as to the Hayes and Cox verdicts. Neither *Brady* nor its progeny decide what weight a state court must give to suppressed *Brady* evidence in the materiality calculation.

Nor is the First District's decision based on an unreasonable determination of the facts in light of the state court record. The testimony established that Detective Upchurch's involvement with the Hayes and Cox cases was minimal. It is difficult to fault Hayes' identification of Robertson as the man who shot him because they were acquainted from previous occasions when

Hayes provided Robertson with transportation. The testimony at the first trial that was held by the First District in *Robertson I* to be inadmissible was testimony of Upchurch and Jamisha Willis identifying Robertson as the shooter in the Willis matter only. As to the Cox murder, two eyewitnesses other than the informant Maupin and uninfluenced by Detective Upchurch identified Robertson as the shooter. And while there is good reason to discredit Maupin because of the benefit he derived from testifying, there is no claim of which this Court has been made aware that Maupin's bias was not disclosed to the jury before they voted to convict.[3] Robertson appropriately picks at the State's case on Hayes and Cox (Reply, ECF No. 13, PageID 1746-49), but his conclusion as to how enmeshed Upchurch was with those two verdicts, *id.* at PageID 1749, is ultimately unconvincing. And even if this Court were convinced, that is not the test in habeas. Rather Petitioner must show that the decision was unreasonable in light of the record. While Petitioner carefully cites the record to show bases for his position, there is strong evidence, which the jury believed, that Robertson shot both Hayes and Cox.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be denied. However, Judge Allen's decision demonstrates that a reasonable jurist could disagree with this

---

[3] In fact, Maupin testified that the attorney representing him on two felonious assault charges unrelated to Robertson's case had told him he would probably be sentenced to five years' imprisonment if convicted. After Maupin gave information to the police concerning Robertson's case, he testified that he "wasn't promised anything," but a two-year term of imprisonment was discussed, contingent upon his testifying truthfully at Robertson's trial. (ECF No. 9-3, PageID 1133-35.) He later acknowledged that if he had gone to trial, he could have received a twenty-six year sentence, and that by cooperating at Robertson's trial, he will be sentenced to two years. Id. at PageID 1177-78.

conclusion. Furthermore, the two pleaded grounds for relief are closely related. Therefore, it is also recommended that a certificate of appealability be granted on both grounds for relief.

January 8, 2020.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.